IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYNDA C. LABUDA and MARK LABUDA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 04 C 1281 |
| | ) | |
| | ) | Magistrate Judge |
| JOSEF SCHMIDT and IN-PLACE MACHINING COMPANY, INC. | ) | Jeffrey Cole |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants, Josef Schmidt and In-Place Machining Company, Inc., have moved for a determination that the law of Ontario, Canada applies in this case, and for summary judgment as to damages based upon the application of Ontario law. For the reasons that follow, the motion is denied.

## I
## BACKGROUND

Plaintiffs, Mark and Lynda Labuda, were involved in a motor vehicle accident with the defendant, Josef Schmidt, on June 28, 2002. The accident occurred near the town of Sioux Narrows, Ontario, Canada, about 60 miles north of the Ontario-Minnesota border. At that time, Mr. Schmidt was driving a vehicle owned by In-Place Machining Company, Inc. The Labudas filed suit against both Mr. Schmidt and In-Place Machining. Now, defendants have filed what they call a "Combined Motion for Determination of Foreign Law and Motion for Summary Judgment as to Damages ("*Combined Motion*")."

This case, which arises under the court's diversity jurisdiction, presents a choice-of-law question.

According to the complaint, Lynda Labuda is a Canadian citizen, but also a permanent resident of the United States. Mark Labuda is a United States citizen, residing in Plymouth, Minnesota, a suburb of Minneapolis. Mr. Schmidt is a citizen of Illinois (Answer to Complaint, ¶2), residing in Woodstock, Illinois, while In-Place Machining is a Wisconsin corporation, with its principal place of business in Wisconsin. In their motion, the defendants contend that the law of the Province of Ontario applies to this case, and that it serves to preclude Mark Labuda's recovery of damages and limit Lynda Labuda's recovery.[1] Defendants seek entry of judgment in the amount set forth in an Offer of Judgment they filed, even though it was rejected by the plaintiffs, and despite the prohibition of Rule 68, Federal Rules of Civil Procedure. Given the defendants' submissions and the present state of the record, the defendants' motion must be denied.

## II
## ANALYSIS
### A
### Defendants Have Ignored Local Rule 56.1

The defendants have failed to comply with Local Rule 56.1, which requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Local

---

[1] It appears that Ontario law does not permit suit for injuries sustained in a motor vehicle accident unless the injured person has died of suffered permanent serious disfigurement or permanent serious impairment of an important physical, mental, or psychological function. Insurance Act, R.S.O. 1990, Sec. 267.5(5). In addition, there is a cap on non-economic damages in personal injury cases, set at $100,000 Canadian in 1978. *Andrews v. Grand & Toy Alberta Ltd.*, [1978] 2 S.C.R. 229 (S.C.C.); *Thornton v. Prince George Board of Education*, [1978] 2 S.C.R. 267 (S.C.C.); and *Teno v. Arnold*, [1978] 2 S.C.R. 287 (S.C.C.). Adjusted for inflation, the cap is now approximately $300,000 Canadian. *Somers v Fournier*, 60 O.R.3d 225, 2002 CarswellOnt 2119.

2

Rule 56.1(a)(3). The required statement is to consist of short numbered paragraphs, including within each paragraph specific citations to the record which support the facts set forth. "Failure to submit such a statement constitutes grounds for denial of the motion." *Id.*

The judges in this district, with the approval of the Seventh Circuit, have long required strict compliance with the requirements of these rules. *See FTC v. Bay Area Business Council, Inc.*, _F.3d_ 2005 WL 2036251 (7th Cir. Aug. 25, 2005); *Markham v. White*, 172 F.3d 486, 490 (7th Cir.1999) (discussing Local General Rule 12, the predecessor to Rule 56.1). This means that a district court is entitled "to decide the motion based on the factual record outlined in the [Local Rule 56.1] statements." *Koszola v. Board of Educ. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). Here, defendants have failed to file any statement of material facts whatsoever. That, alone, is grounds for denying their motion. *Murray v. Avon Products, Inc.*, No. 03 C 7594, 2004 WL 2921867, *4 (N.D.Ill. Dec. 16, 2004)(Filip, J.)(*pro se* plaintiff's motion for summary judgment denied where *pro se* plaintiff failed to file statement of facts); *Reynolds v. Claridge Hotel, Inc.*, No. 02 C 1012, 2003 WL 22299026. *1 (N.D.Ill. Oct. 6, 2003)(St. Eve, J.)(summary judgment denied for failure to file statement of facts); *Iron Workers Tri-State Welfare Plan v. Jaraczewski*, No. 02 C 2596, 2002 WL 31854972, *1 (N.D.Ill. Dec. 19, 2002)(Kocoras, J.)(same).

In their reply memorandum, the defendants seek to excuse themselves from the dictates of the local rules by explaining that they have provided the necessary facts in their motion and memorandum. (*Defendants' Reply to Plaintiff's Response*, at 8). The Rule 56.1 statement, however, is not a mere supplement to the supporting memorandum; it is a required document, separate and apart from the memorandum. *FTC v. Bay Area Business Council, supra.*;, *Malec v. Sanford*, 191 F.R.D. 581, 585

(N.D.Ill. 2000). The failure to submit a *separate statement of facts* constitutes a violation of the local rules even where the party has asserted facts within its motion or memorandum. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995); *Fortenberry v. United Airlines*, 28 F.Supp.2d 492, 495 (N.D.Ill. 1998). Substantial compliance is not strict compliance. *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Here, defendants have simply ignored the rule and, consequently, their motion is denied.

Second, even if their motion and memorandum were to be considered, the defendants' manner of setting forth those facts would still warrant denial of their motion. Local Rule 56.1(a)(3) requires specific citations to the record. *FTC v. Bay Area Business Council*, 2005 WL 2036251; *Ammons*, 368 F.3d 809, 817. That means a reference to a specific page number, not a citation to an entire exhibit. *Id.* at 817-18. Here, defendants fail to refer the court to specific page numbers in the exhibits they cite in their motion and memorandum. For example, defendants cite the affidavit of John Burnes, Esq., Exhibit "H" in support of several of their contentions. This is a 10-page, 36-paragraph document, supported by ten additional exhibits. Defendants include no page or paragraph references when they refer to this document. (*Combined Motion*, at 8, 10). Mr. Burnes' affidavit then compounds defendants' failure by failing to include page or even exhibit numbers when it refers to certain evidence. (*See, e.g.,* Ex. H, ¶¶ 20, 21, 25, 26, 27, 28, 34). Clearly, the materials defendants have submitted do not comply with the unambiguous requirements of Local Rule 56.1 and, indeed, do not even approach compliance with the Rule. Appellate judges are not like pigs hunting for truffles buried in the briefs. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Neither are lower court judges. Consequently, the defendants' motion for summary judgment must be denied.

# B
## Defendants Violated Rule 68, Federal Rules of Civil Procedure

Third, Local Rule 56.1 is not the only rule defendants have chosen to ignore in connection with their summary judgment motion. For whatever reason, the defendants filed an offer of judgment on March 3, 2005, almost concurrently with their summary judgment motion. Defendants then relied upon the unaccepted offer of judgment to support their summary judgment argument as to the damages to which the plaintiffs are entitled. (*Combined Motion*, at 11-13). Because plaintiffs never accepted the offer, however, it should never have been filed. Fed.R.Civ.P. 68. As Judge Shadur explained in *Kason v. Amphenol Corp.*, 132 F.R.D. 197 (N.D.Ill. 1990):

> Rule 68 is really unambiguous – its first sentence provides only for the service of offers of judgment on the adverse party, while its second sentence calls for filing of the offer only if the adverse party accepts it within ten days after such service. By strong negative inference, that latter reference to filing if and when the offer is accepted confirms the plain meaning of Rule 68's first sentence that no filing is permitted at the time of tender.

132 F.R.D. at 197. Accordingly, the improperly filed offer of judgment is stricken.

Rule 68 also states that "[a]n offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs." Thus, defendants' reliance upon their offer of judgment in their summary judgment motion violates the Federal Rules of Civil Procedure. *Whitaker v. West Village Ltd. Partnership*, No. Civ.A.3:03-CV-0411-P, 2004 WL 2008502, *3 (N.D.Tex. Sept. 8, 2004); *Citizens for a Better Environment v. Village of Elm Grove*, 485 F.Supp. 363, 365 (E.D.Wis. 1980). The defendants' reliance on inadmissible evidence to support their motion for summary judgment is one more reason to deny their motion, for Rule 56(e) requires that the motion be supported by admissible evidence.

# C
## Additional Concerns
### 1
### Applicable Choice-of-Law Analysis

Although denial of the defendants' motion based on Local Rule 56.1, and the absence of admissible evidence once the offer of judgment is stricken, it is useful to discuss the parties' treatment of the substantive issues in the case as they undoubtedly will recur. First is the choice-of-law question. The parties agree that federal courts sitting in diversity apply the choice-of-law rules of the forum state – Illinois – to determine the applicable substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). After that, however, the analysis is a bit more involved than the parties would lead one to believe.

Illinois courts employ the "most significant contacts" analysis to resolve choice-of-law questions. *Ingersoll v. Klein*, 46 Ill.2d 42, 45, 262 N.E.2d 593, 595 (1970): When two or more jurisdictions have an interest in applying their law to a matter in controversy, the following factors, drawn from the Restatement of the Law of Conflicts, are relevant in choosing which rule of law to apply:

   (a) the needs of the interstate and international systems,

   (b) the relevant policies of the forum,

   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

   (d) the protection of justified expectations,

   (e) the basic policies underlying the particular field of law,

   (f) certainty, predictability and uniformity of result, and

   (g) ease in the determination and application of the law to be applied.

*Jones v. State Farm Mut. Auto. Insurance. Co.*, 289 Ill.App.3d 903, 917, 682 N.E.2d 238, 248 (1st Dist. 1997) (*citing Estate of Barnes*, 133 Ill.App.3d 361, 366, 478 N.E.2d 1046, 1050 (1st Dist. 1985)); Restatement (Second) of Conflict of Laws § 6 (1971).

Where a conflict arises in the area of tort law, as here, the Restatement requires that the law of the state that has "the most significant relationship to the occurrence and the parties under the principles stated" in §6 of the Restatement should be applied. *Jones*, 289 Ill.App.3d at 917, 682 N.E.2d at 248; *Barnes*, 133 Ill.App.3d at 366, 478 N.E.2d at 1050; Restatement § 145. Important contacts that the forum will consider in determining the state with the most significant relationship are:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Jones*, 289 Ill.App.3d at 917, 682 N.E.2d at 248; *Barnes*, 133 Ill.App.3d at 367, 478 N.E.2d at 1050; Restatement § 145.

Conflicts analysis is often subtle and not simple, *see, e.g., Ruiz v. Blentech Co.*, 89 F.3d 320 (7th Cir. 1996), and requires a more sophisticated "interest analysis" than merely tallying the number of contacts in each state. *Jones*, 289 Ill.App.3d at 917, 682 N.E.2d at 249; *Barnes*, 133 Ill.App.3d at 367, 478 N.E.2d at 1050. This approach is based on the conclusion that contacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws. *Jones*, 289 Ill.App.3d at 917, 682 N.E.2d at 249; *Barnes*, 133 Ill.App.3d at 367, 478 N.E.2d at 1050-

51. Accordingly, Illinois courts construe sections 6 and 145 of the Restatement together as requiring (1) an examination of the relevant policies of the forum; and (2) the relevant policies of other interested states and the basic policies underlying the particular field of law in order to determine whether a contact has any significance for choice of law purposes. *Jones*, 289 Ill.App.3d at 918, 682 N.E.2d at 249; *Barnes*, 133 Ill.App.3d at 367, 478 N.E.2d at 1051. Here, neither party suggested such an analysis nor, given the extremely limited record the parties have accumulated, could one be intelligently undertaken.

For example, in arguing that the law of the Province of Ontario, as the site of the accident, must apply, defendants rely to a great extent on language selectively excised from *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999): "the highest scorer on the 'most significant relationships' test is the place where the injury occurred." (*Combined Motion*, at 4-5; *Defendants' Reply to Plaintiff's Response*, at 6). "Judges expect their pronunciamentos to be read in context," *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.), and the Supreme Court has warned time and again against hyper-literal parsing of and preoccupation with words surgically excised from the broader context of an opinion. *See e.g., United States v. Apfelbaum*, 445 U.S. 115, 120 n.6 (1980); *Reiter v. Sonotone*, 442 U.S. 330, 341 (1979).

The defendants have ignored, in their quotation, the introductory phrase, "in the absence of unusual circumstances..." 174 F.3d at 844.[2] Indeed, the Seventh Circuit has noted on other occasions that while

---

[2] In *Spinozzi*, the plaintiff was an Illinois resident vacationing in Mexico who was injured when he fell into an excavation site at the hotel where he was staying. The court noted that Illinois residents might want a higher standard of care than the average hotel guest in Mexico, but that this was no reason to supplant Mexican law. Otherwise, the court reasoned, Mexican safety standards would be set by those with little stake in those standards. 174 F.3d at 845. In stating that the place where a tort occurs generally is the most significant contact, the court explained that it:

(continued...)

"the place of the accident retains presumptive weight in a tort case, [] the presumption is easily overcome." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 915 (7th Cir. 1994) (*quoting Kaczmarek v. Allied Chemical Corp*, 836 F.2d 1055, 1058 (7th Cir. 1987).

For example, courts have looked past the place of the accident in situations where it was the result of mere happenstance. In *Babcock v. Jackson*, 12 N.Y.2d 473, 191 N.E.2d 279 (1963) – considered a bellwether for the move away from the *lex loci delicti* rule – the court applied New York law where plaintiff and defendant resided in New York, but the accident fortuitously occurred in Ontario during a weekend automobile trip. Similarly, in Illinois' seminal "significant contacts" case, the Illinois Supreme Court held that the law of Illinois, rather than Iowa, applied where an Illinois resident drowned in an automobile accident when his car happened to break through ice on the Iowa side of the Mississippi River. *Ingersoll*, 46 Ill.2d at 45, 262 N.E.2d at 594. In so holding, the court rejected the application of *lex loci delicti* as arbitrary in such circumstances. 46 Ill.2d at 48, 262 N.E.2d at 596.

Indeed, when faced with motor vehicle accidents occurring in foreign jurisdictions, courts often endeavor to determine whether the site of the accident was merely adventitious. In *O'Connor v. O'Connor*,

---

[2](...continued)
is the place that has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law. Most people affected whether as victims or as injurers by accidents and other injury-causing events are residents of the jurisdiction in which the event takes place. So if law can be assumed to be generally responsive to the values and preferences of the people who live in the community that formulated the law, the law of the place of the accident can be expected to reflect the values and preferences of the people most likely to be involved in accidents--can be expected, in other words, to be responsive and responsible law, law that internalizes the costs and benefits of the people affected by it.

174 F.3d at 845. Thus, even when the site of the injury is deemed to have the most significant contacts, that determination is not reached by the simple reflex that the defendants would have us believe. Other, more sophisticated concerns must be considered.

201 Conn. 632, 636, 519 A.2d 13, 15 (1986), although Quebec was the place of injury, it had no significant interest in applying its statutory compensation scheme to the controversy because location of automobile accident in Quebec was purely fortuitous. Other cases have come to the same result. *See, e.g., Moore v. United Services Auto. Ass'n,* 808 F.2d 1147, 1151 (5th Cir. 1987)(occupants of vehicle at the time of the accident were Florida residents; only contact with Mississippi was fortuitous circumstance that automobile crash occurred there); *Johnson v. Ford Motor Co., Inc.,* No. 01 C 8882, 2003 WL 22317425,*3 (N.D.Ill. 2003)(applying Illinois damages law where Illinois residents were injured in auto accident in Kentucky during trip to Florida)*Kramer v. Acton Toyota, Inc.,* No. 993733, 2004 WL 2697284, *3 (Mass.Super. Nov. 2, 2004)(Massachusetts law applied where accident occurred when plaintiffs were merely passing through Connecticut on way to New York on trip that began, and was intended to end, in Massachusetts).

In *Schulze v. Illinois Highway Transportation Co.*, 97 Ill.App.3d 508, 423 N.E.2d 278 (3rd Dist. 1981), the Third District analyzed a choice-of-law issue in a motor vehicle accident case which, like the instant case, involved a right of recovery question. The passengers of a bus were injured in an accident in Michigan during round trip from Illinois to Michigan. The court reasoned that the place of injury did not control because the accident could have just as easily occurred on an Illinois or Indiana highway, and the dissimilarity between the applicable Michigan and Illinois law addressed the right of recovery and the amount of recovery allowable. 97 Ill.App.3d at 511, 423 N.E.2d at 280. Going beyond a mere tallying of contacts and focusing on the states' interests, the court emphasized that, under such "circumstances, the place of the parties' domicile is of primary importance, for that is the state which presumably will feel the social and economic impact of recovery and non-recovery." *Id.* In sum, this case is not an exception to

the principle that conflicts analysis is not a mechanistic enterprise, and the present record as compiled by the parties is not adequate for the kind of comprehensive analysis the law requires. Accordingly, to adequately develop this case, the parties must come forward with more analysis than a mere tallying of significant contacts, and more than a fact or two regarding the site of the accident and the domiciles of the parties.

## 2
## Expert Testimony on Foreign Law

Under Rule 44.1, Federal Rules of Civil Procedure:

> [a] party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Under this rule, expert testimony accompanied by extracts from foreign legal material is the preferred method by which foreign law is determined. *See Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 713 (5th Cir. 1999); *Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1039 (9th Cir. 1999). *See generally*, Carolyn B. Lamb and K. Elizabeth Tang, Rule 44.1 and Proof of Foreign Law in Federal Court, 30 LITIGATION 31 (Fall 2003). And, in general, summary judgment is appropriate to determine the content of foreign law. *Access Telecom*, 197 F.3d at 713 (*citing* 9 Wright & Miller, Federal Practice and Procedure Civ.2d § 2444); Proof of Foreign Law in Federal Court at 31. In this regard, emphasis must be placed on the determination of the *content* of foreign law. A brief review of the expert's affidavit upon which the defendants rely suggests that defendants expect to employ expert testimony beyond what is contemplated by Rule 44.1.

Defendants' expert, Mr. Burnes, appears to be qualified to testify as to the content of Ontario law.[3] He is a Barrister and Solicitor in Toronto, Ontario, and has been practicing exclusively in the area of personal injury and property damage claims since 1983. But he is not a medical expert. Yet, he seemingly resorts to medical expertise at various points in his affidavit. For example, Mr. Burnes states that he:

> understand[s] from a review of medical documentation that the claimant, Mark Labuda, returned to work less than 30 days after the accident. The photographs appear to make reference to possible skin abrasions or scarring. Based upon a review of the medical documents and the photographs, it is my opinion that the Plaintiff, Mark Labuda, will not be capable of meeting the necessary "threshold" level to prove both permanent and also serious impairment of a physical, mental or psychological function. Under these circumstances, Mark Labuda will not be able to advance a claim for general damages.

(Ex. H, Burnes Aff., ¶ 20). While Mr. Burnes adverts to a review of "medical documents and the photographs," he does not describe in any detail what they consist of, what they show, or the basis upon which made his conclusory determination. An expert, who supplies nothing but a bottom line supplies nothing of value to the judicial process. *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997). More importantly, Mr. Burnes' appropriate role – indeed his only role – is to provide his expertise as to how an Ontario court would determine whether Mr. Labuda meets the statutory threshold of permanent and serious impairment. His affidavit does not do that. It simply gives his opinion that the plaintiff cannot pass the test. Without a far greater degree of proof than has been adduced thus far, I cannot conclude that Ontario law requires the result defendants seek.

---

[3] "An expert witness [testifying about foreign law] is not required to meet any special qualifications. Indeed he need not even be admitted to practice in the country whose law is in issue." *In re Grand Jury Proceedings*, 40 F.3d 959, 964 (9th Cir. 1994) (*quoting* 9 Wright & A. Miller, Federal Practice & Procedure § 2444, at 406 (1971)). *See also Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 92 (2nd Cir. 1998); Lamb and Tang, Rule 44.1 and Proof of Foreign Law in Federal Court, 30 LITIGATION at 34.

Put another way, the affidavit that has been provided seeks to do far more than assist me in determining what the foreign law is. It seeks to resolve factual questions. That is not the function of a foreign law expert. *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997). In *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 245 (D.N.J. 1997), for example, the plaintiff sought to introduce an expert report on foreign law pursuant to Rule 44.1. In the report, however, the expert also sought to assist the fact finder as to which facts to find in the case. The court explained "that use of an expert report to assist the court in its determination of foreign law is entirely different from use of an expert report, pursuant to Rule 702, Fed.R.Evid., to aid the jury in determining facts." 177 F.R.D. at 264.

Similarly, in *ID Sec. Systems Canada, Inc. v. Checkpoint Systems, Inc.*, 198 F.Supp.2d 598 (E.D.Pa. 2002), the court considered an expert report dealing with contract law in the Province of Ontario. To the extent that the expert opined on the substantive provisions of Ontario contract law, the court found that the expert's report may assist the court in making a determination as to the substance of Ontario law. 198 F.Supp.2d at 623. To the extent the report extended beyond providing an analysis of Ontario law, and offered to assist the fact finder as to which facts to find, the court found the testimony improper under Rule 44.1. *Accord Hexamedics v. Guidant Corp.*, No. CIV 00-2532(PAM/JGL), 2002 WL 246678, *7 (D.Minn. Feb. 8, 2002).

The expert's affidavit goes beyond the permissible ambits of Rule 44.1. It does more than discuss the substance of Ontario law and the manner in which it is applied. It seeks to resolve questions of fact regarding the extent of the Labuda's injuries. Like the reports in *Lithuanian Commerce Corp.*, *ID Sec. Systems*, and *Hexamedics*, it is improper.

13

## CONCLUSION

For the foregoing reasons the defendants' combined motion regarding the application of Ontario law in this case and for summary judgment [26] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 9-19-05